150 P.3d 823

Benjamin Paul KEKONA and Tamae M. Kekona, Plaintiffs–Appellees, Cross–Appellants, Respondents,

v.

Paz Feng ABASTILLAS, also known as Paz A. Richter, Defendant–Appellant, Cross–Appellee, Respondent–Petitioner,

and

Robert A. Smith, Attorney at Law, a Law Corporation, Defendant–Appellant, Cross–Appellee, Respondent–Petitioner,

and

Standard Management, Inc., and Western Surety Company, Defendants–Appellants, Cross–Appellees, Respondents,

and

Michael Bornemann, M.D., Defendant–Appellant, Cross–Appellee, Petitioner–Respondent,

and

U.S. Bancorp Mortgage Company, an Oregon Company; John Does 1–10; Doe Corporations 1–10; and Doe Entities 2–10, Defendants.

No. 24051.

Supreme Court of Hawai'i.

Sept. 26, 2006.

Peter Van Name Esser and Edward J. Bybee, Honolulu, for petitioner Michael Bornemann, M.D., on the application.

Fred Paul Benco, Honolulu, for respondent Benjamin Paul Kekona and Tamae M. Kekona, on the response.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ., and Circuit Judge LEE in Place of ACOBA, J., recused.

Opinion of the Court by NAKAYAMA, J.

The present matter involves three applications for writs of certiorari filed by Paz Feng Abastillas, a.k.a. Paz A. Richter [hereinafter "Abastillas"], Robert A. Smith [hereinafter "Smith"], and Michael Bornemann, M.D. [hereinafter "Bornemann"]. Abastillas, Smith and Bornemann appeal from the Intermediate Court of Appeals' [hereinafter "ICA"] June 8, 2006 memorandum opinion [hereinafter "the ICA's opinion"] partially affirming and partially vacating the first circuit court's February 26, 2001 "Amended Revised Final Judgment."

We accepted certiorari to address the following arguments presented by Bornemann's application: [1] (1) the ICA gravely erred by permitting a $594,000 award of punitive damages after vacating the only actual damages awarded against him; (2) the ICA gravely erred by rejecting the overwhelming majority view requiring proof of a fraudulent transfer by clear and convincing evidence; (3) the ICA gravely erred by ruling that the Kekonas could obtain both reconveyance and damages for the alleged fraudulent transfers; and (4) the ICA gravely erred by ruling that the legislature's enactment of the Uniform Fraudulent Transfer Act [hereinafter "UFTA"] abrogated this jurisdiction's preferential transfer doctrine.

Based upon the following analysis, we conclude that the ICA erred by holding that a fraudulent transfer may be proved by a "preponderance of the evidence." Accordingly,

---

**1.** The applications filed by Abastillas and Smith fail to present this court with any cognizable legal argument, demonstrating either "[g]rave errors of law or of fact" or "[o]bvious inconsistencies in the decision of the [ICA] with that of the supreme court, federal decisions, or its own decision" We decline to grant them. *See* 2006 Haw. Sess. L. Act 149, § 1 (amending Hawai'i Revised Statutes [hereinafter "HRS"] § 602–59 (Supp. 2005) (effective July 1, 2006)).

we remand the case for new trial consistent with this opinion.

## I. BACKGROUND

On May 25, 1993, Benjamin P. Kekona and Tamae M. Kekona [hereinafter "the Kekonas"] obtained a substantial jury verdict against Abastillas, Smith, and Standard Management, Inc. [hereinafter "SMI"], a corporation wholly owned by Abastillas. On May 26, 1993, a quitclaim deed—transferring Abastillas' interest in real estate described as Unit #1809, Honolulu Park Place, 1212 Nuuanu Avenue, Honolulu, Hawai'i [hereinafter "the HPP property"] to Bornemann—was recorded at the Bureau of Conveyances [hereinafter "BOC"]. Subsequently, on June 1, 1993, the following two quitclaim deeds were recorded at the BOC: (1) a quitclaim deed transferring the interest of SMI and Robert A. Smith, Attorney at Law, a Law Corporation [hereinafter "RASCORP"] in real estate described as 47–186 Kamehameha Highway, Kaneohe, Hawai'i [hereinafter "the Kaneohe property"] to Abastillas; and (2) a quitclaim deed transferring Abastillas' interest in the Kaneohe property to Bornemann.

On October 13, 1993, the Kekonas filed a complaint alleging, *inter alia,* that: (1) the aforementioned conveyances were fraudulent, in violation of HRS chapter 651C; (2) Abastillas, Smith, Bornemann, SMI, and RASCORP engaged in a civil conspiracy to commit fraudulent conveyances; and (3) Abastillas and Smith illegally notarized each other's signatures on the instruments executing the aforementioned conveyances.

Following trial,[2] the jury returned a special verdict form on May 21, 1999.

With respect to the Kekonas' fraudulent conveyance claim, the jury made the following findings by a preponderance of the evidence: (1) Abastillas, RASCORP, and SMI transferred the Kaneohe property with the actual intent of hindering, delaying or defrauding the Kekonas; (2) Bornemann did not receive the Kaneohe property in good faith and for reasonably equivalent value; (3) Abastillas transferred the HPP property with the actual intent of hindering, delaying

or defrauding the Kekonas; and (4) Bornemann did not receive the HPP property in good faith and for reasonably equivalent value. In connection with the fraudulent transfers of the Kaneohe property, the jury assessed the following damages: (1) $29,064.00 in special damages and $17,436.00 in general damages against Abastillas; (2) $6,000.00 in special damages and $3,600.00 in general damages against RASCORP; and (3) $156,564.00 in special damages and $93,936.00 in general damages against SMI. In connection with the fraudulent transfer of the HPP property, the jury assessed $15,128.00 in special damages and $9,076.00 in general damages against Abastillas.

With respect to the Kekonas' conspiracy claim, the jury found, by clear and convincing evidence, that (1) Abastillas, Smith, RASCORP, SMI and Bornemann conspired to fraudulently transfer the Kaneohe property, and (2) Abastillas, Smith, and Bornemann conspired to fraudulently transfer the HPP property. The jury assessed $100,000 against Abastillas, Smith, RASCORP, SMI and Bornemann, jointly and severally, in connection with their conspiracy to fraudulently transfer the Kaneohe property. The jury assessed another $100,000 against Abastillas, Smith, and Bornemann, jointly and severally, in connection with their conspiracy to fraudulently transfer the HPP property.

With respect to the Kekonas' illegal notarization claim, the jury found, by a preponderance of the evidence, that Abastillas and Smith engaged in official misconduct relating to the acknowledgment of deeds to the Kaneohe and HPP properties. The jury assessed the following damages: (1) $95,500.00 in special damages and $57,300.00 in general damages against Abastillas; and (2) $95,500.00 in special damages and $57,300.00 in general damages against Smith.

Finally, the jury found that Abastillas, Smith, RASCORP, SMI, and Bornemann were each liable for $250,000.00 in punitive damages.

On July 12, 1999, the circuit court filed a judgment reflecting the damages awarded in the May 21, 1999 special verdict form. The

---

2. The Honorable Rhonda A. Nishimura presided.

judgment also "vacated, cancelled and set aside as fraudulent and of no force or effect" the following deeds: (1) that certain quitclaim deed dated May 14, 1992 and recorded in the BOC as Document No. 93–084805 on May 26, 1993, pertaining to the HPP property; (2) that certain quitclaim deed dated June 9, 1992 and filed with the Assistant Registrar of the Land Court of the State of Hawai'i as Document No. 2029945 on June 1, 1993, noted on Transfer Certificate of Title No. 342,305, pertaining to the Kaneohe property; (3) that certain quitclaim deed dated May 27, 1993 and filed with the Assistant Registrar of the Land Court of the State of Hawai'i as Document No. 2029946 on June 1, 1993, noted on Transfer Certificates of Title No. 342,305 and/or 414,762, pertaining to the Kaneohe property; (4) that certain confirmatory quitclaim deed dated October 25, 1993 and filed with the Assistant Registrar of the Land Court of the State of Hawai'i as Document No. 2080638 on October 27, 1993, noted on Transfer Certificates of Title No. 342,305, 424,555, and/or 417,762, pertaining to the Kaneohe property; and (5) that certain quitclaim deed dated October 25, 1993 and filed with the Assistant Registrar of the Land Court of the State of Hawai'i as Document No. 2080639 on October 27, 1993, noted on Transfer Certificates of Title No. 424,555 and/or 424,556, pertaining to the Kaneohe property.

On July 22, 1999, Abastillas, Smith, RASCORP, and SMI filed motions for a new trial, to vacate the judgment, and for judgment notwithstanding the verdict. Bornemann also filed a motion for new a trial on July 22, 1999.

The circuit court denied the motions filed by Abastillas, Smith, RASCORP, and SMI on September 2, 1999.

On October 6, 1999, the circuit court filed an order denying Bornemann's motion for a new trial. However, despite denying Bornemann's motion, the court concluded that the jury's award of punitive damages was excessive and ordered a new trial to determine a more appropriate amount:

1. The motion for a new trial be and is hereby denied.

2. The motion to eliminate and/or reduce the amount awarded as conspiracy damages be and is hereby denied.

3. The motion to eliminate punitive damages assessed against [Bornemann] is denied. However, the Court finds that the punitive damages assessed against [Bornemann] in the amount of $250,000.00 was excessive and hereby reduces the amount of punitive damages to $75,000.00.

4. There shall be a new trial solely on the question of punitive damages awarded to [the Kekonas] against [Bornemann] unless, within seven (7) calendar days after service of a copy of this Order on [the Kekonas'] attorney, [the Kekonas] file with the clerk of the court a written consent to reduce the verdict to $75,000.00 for punitive damages awarded to [the Kekonas] against [Bornemann].

Following the new trial,[3] the jury found Bornemann liable for $594,000.00 in punitive damages. The circuit court thereafter filed a "Revised Final Judgment" on November 30, 2000, and an "Amended Revised Final Judgment" on February 26, 2001.

The ensuing appeals and cross-appeal, which were assigned to the ICA, presented the following points of error:

1. Abastillas, SMI, Smith, RASCORP, and Dr. Bornemann contend that the circuit court reversibly erred by instructing the jury that fraudulent transfers could be proven by a preponderance of the evidence. They contend that clear and convincing evidence should have been required.

2. Abastillas, SMI, Smith, RASCORP, and Dr. Bornemann contend that the circuit court reversibly erred (a) in holding that the common law "preferential transfer" rule was abrogated by HRS 651C–8 (1993), and (b) in not instructing the jury to consider the common law "preferential transfer" rule as a defense.

3. Notwithstanding their agreement to this instruction, Abastillas, SMI,

---

3. The Honorable Victoria S. Marks presided.

Smith, and RASCORP contend that the circuit court reversibly erred when it instructed the jury that "proof of slight connection to conspiracy is sufficient to support such accountability[.]"

4. Abastillas, SMI, Smith, and RAS-CORP contend that the circuit court reversibly erred when it failed to grant their motions for summary judgment, directed verdict, or new trial on Count IV, the Kekonas' illegal notary claim. [Western Surety Company] contends that the circuit court reversibly erred in denying partial summary judgment, directed verdict, or JNOV on Count IV.

5. Notwithstanding their agreement at trial to these instructions, Abastillas, SMI, Smith, RASCORP, and Dr. Bornemann contend that the circuit court erred by giving the conspiracy instructions because "the vast majority of cases [from other jurisdictions] ... have refused to allow conspiracy actions for fraudulent transfer[; when] there is no tort, there can be no conspiracy[.]"

6. Abastillas, SMI, Smith, RAS-CORP, and Dr. Bornemann contend that the circuit court reversibly erred in refusing, post-judgment pursuant to a Hawai'i Rules of Civil Procedure Rule 60(b) motion, (a) to reduce the Kekonas' judgment to the statutory limits specified in HRS § 651C–7, and (b) to vacate the general, conspiracy, and punitive damages awarded.

7. The Kekonas contend that "[t]he trial court erred and abused its discretion in awarding the Kekonas only $2,000 in damages against [Western Surety Company], where the special, general and punitive damages caused by the wrongful notarizations of Smith and Abastillas exceeded $1,000,000."

8. Dr. Bornemann contends that the circuit court reversibly erred by forcing Dr. Bornemann, during the second jury trial, "to present his entire defense during his cross-examination in the plaintiff's case."

The ICA's opinion at 16–17, 2006 WL 1562086. (Some brackets added and some in original.) (Ellipses in original.)

On June 8, 2006, the ICA filed a memorandum opinion rejecting the foregoing points of error. The ICA affirmed the circuit court's February 26, 2001 "Amended Revised Final Judgment," except that it vacated (1) the $100,000.00 award of general damages assessed jointly and severally against Abastillas, Smith, SMI, RASCORP, and Bornemann in connection with their conspiracy to fraudulently transfer the Kaneohe property, and (2) the $100,000.00 award of general damages assessed jointly and severally against Abastillas, Smith, and Bornemann in connection with their conspiracy to fraudulently transfer the HPP property, inasmuch as those damage awards were not supported by evidence in the record.

On July 12, 2006, Bornemann filed an application for writ of certiorari. Smith filed an application for writ of certiorari on July 17, 2006. The ICA filed a judgment on appeal on July 18, 2006. Thereafter, on July 24, 2006, Abastillas filed her application for writ of certiorari.[4]

## II. STANDARD OF REVIEW

The appropriate standard of review is set forth in 2006 Haw. Sess. L. Act 149, § 1, as follows:

(a) After issuance of the intermediate appellate court's judgment or dismissal order, a party may seek review of the intermediate appellate court's decision and judgment or dismissal order only by application to the supreme court for a writ of certiorari, the acceptance or rejection of which shall be discretionary upon the supreme court.

---

4. Hawai'i Rules of Appellate Procedure [hereinafter "HRAP"] Rule 40.1(a) (2006) permits a party to apply for a writ of certiorari "[n]o later than 90 days *after* the filing of the intermediate court of appeals' judgment on appeal[.]" (Emphasis added.) Although Bornemann and Smith filed premature applications, we nevertheless entertained them inasmuch as (1) the ICA filed its judgment on appeal before we filed an order dismissing the applications without prejudice, and (2) we are presently in receipt of Abastillas' application, which was timely filed.

(b) The application for writ of certiorari shall tersely state its grounds, which shall include:

(1) Grave errors of law or of fact; or

(2) Obvious inconsistencies in the decision of the intermediate appellate court with that of the supreme court, federal decisions, or its own decision, and the magnitude of those errors or inconsistencies dictating the need for further appeal.

## III. DISCUSSION

### A. Punitive Damages

 Bornemann first contends that punitive damages are not allowable where there is insufficient evidence of actual compensatory damages.

 This court has stated generally that punitive damages are "assessed in addition to compensatory damages for the purpose of punishing the defendant for aggravated or outrageous misconduct and to deter the defendant and others from similar conduct in the future." *Masaki v. General Motors Corp.,* 71 Haw. 1, 6, 780 P.2d 566, 570 (1989). Bornemann relies on that portion of the foregoing statement that reads "in addition to compensatory damages" for the proposition that compensatory damages are a necessary prerequisite to an award of punitive damages. That interpretation misconstrues the aforequoted language.

The purpose behind requiring actual damages, prior to the imposition of punitive damages, is to ensure that the plaintiff has established a claim for relief. As noted by the California Court of Appeals,

[t]he requirement of 'actual damages' ... is simply the requirement that a tortious act be proven if punitive damages are to be assessed. The rule that exemplary damages cannot be imposed unless the plaintiff has suffered actual damages ... is based on the principle that the defendant must have committed a tortious act before exemplary damages can be assessed.'

*Topanga Corp. v. Gentile,* 249 Cal.App.2d 681, 691–92, 58 Cal.Rptr. 713, 719 (Cal.Ct. App.1967) (citations omitted).

Other jurisdictions have also identified the establishment of a claim for relief as the trigger authorizing an assessment of punitive damages, insofar as (1) the establishment of a claim entitles a plaintiff to nominal damages, and (2) an award of nominal damages satisfies the "actual damages" requirement that serves as a prerequisite to an award of punitive damages. *See Hawkins v. Hawkins,* 101 N.C.App. 529, 400 S.E.2d 472, 474 (1991) ("Once a cause of action is established, plaintiff is entitled to recover, as a matter of law, nominal damages, which in turn support an award of punitive damages.... Therefore, the failure of the plaintiff to actually receive an *award* of either nominal or compensatory damages is immaterial.") (Emphasis in original.); *Ault v. Lohr,* 538 So.2d 454, 455 (Fla. 1989) (concluding that "a jury finding of liability is the equivalent of finding nominal damages and, consequently, the jury may assess punitive damages.");[5] *Maring–Crawford Motor Co. v. Smith,* 285 Ala. 477, 233 So.2d 484, 492 (1970) ("[A]n award of nominal damages authorizes, in the discretion of the trier of fact, the award of punitive damages where legal malice, willfulness, and a reckless disregard accompanies the invasion of the rights of another.").

Hawai'i law is in accord. We have previously described nominal damages as "a token" and "a symbolic award," *see Zanakis–Pico v. Cutter Dodge, Inc.,* 98 Hawai'i 309, 329, 47 P.3d 1222, 1242 (2002), and that "nominal damages ... may be a basis for punitive damages in fraud actions, because the aim of punitive damages is to punish the defendant, rather than to compensate the plaintiff." *Id.* at 330, 47 P.3d at 1243 (citations omitted); *see also Weinberg v. Mauch,* 78 Hawai'i 40, 51, 890 P.2d 277, 288 (1995) ("The circuit court correctly recognized that, in general, punitive damages can be based on nominal damages only."). Accordingly, if nominal damages may serve as a basis for punitive damages, then the establishment of

---

**5.** In *Zanakis–Pico v. Cutter Dodge, Inc.,* 98 Hawai'i 309, 330 n. 4, 47 P.3d 1222, 1244 n. 4 (2002), we cited *Ault* with approval for the proposition that a finding of liability alone will support a punitive damage award, even absent a compensatory damage award.

liability must logically constitute a sufficient basis for assessing punitive damages.

Therefore, the ICA did not err by vacating the actual damages awarded against Bornemann, while simultaneously affirming the award of punitive damages, insofar as the ICA did not vacate—and thus it implicitly affirmed—Bornemann's underlying liability for conspiring to fraudulently transfer the Kaneohe and HPP properties.

### B. The "Clear and Convincing Evidence" Standard of Proof

■ Bornemann next contends that the ICA erred by holding that a fraudulent transfer need only be proved by a "preponderance of the evidence," inasmuch as a "clear and convincing evidence" standard of proof was required.

We have previously discussed the various burdens of proof as follows:

> The law has evolved three standards of levels of proof for different types of cases. In most civil proceedings, such as a case involving a monetary dispute between private parties, the plaintiff must show by a "preponderance of the evidence" that his or her claim is valid. Under the preponderance standard, the parties share the risks of an erroneous verdict in roughly equal fashion. [Addington v. Texas, 441 U.S. 418,] 423, 99 S.Ct. [1804,] 1808, 60 L.Ed.2d [323,] 329 [ (1979) ]. The preponderance standard directs the factfinder to decide whether "the existence of the contested fact is more probable than its nonexistence." E. Cleary, McCormick on Evidence § 339, at 957 (3d ed.1984). As one commentator points out, to prevail, "[a] plaintiff need only offer evidence sufficient to tip the scale slightly in his or her favor, and a defendant can succeed by merely keeping the scale evenly balanced." Comment, The Imposition of Punitive Damages in Product Liability Actions in Pennsylvania, 57 Temp. L.Q. 203, 224 (1984).
>
> At the other end of the spectrum, in criminal proceedings, the government is required to prove its case "beyond a reasonable doubt." Society has judged that it is significantly worse for an innocent [person] to be found guilty of a crime than for a guilty [person] to go free. Therefore, as stated by the Supreme Court, "[w]here one party has at stake an interest of transcending value—as a criminal defendant his [or her] liberty—this margin of error is reduced as to him by the process of placing on the other party the burden ... of persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt." Speiser v. Randall, 357 U.S. 513, 515–26[,] 78 S.Ct. 1332, 1341[,] 2 L.Ed.2d 1460, 1472 (1958); see also Addington, 441 U.S. at 423–24, 99 S.Ct. at 1808, 60 L.Ed.2d at 329.
>
> The level of proof between these two extremes is that of "clear and convincing" evidence....
>
> ....
>
> Thus, "clear and convincing" evidence may be defined as an intermediate standard of proof greater than a preponderance of the evidence, but less than proof beyond a reasonable doubt required in criminal cases. It is that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established, and requires the existence of a fact be highly probable. See Welton v. Gallagher, 2 Haw.App. 242, 245–46, 630 P.2d 1077, 1081 (1981); Bud Wolf Chevrolet, Inc. v. Robertson, 519 N.E.2d 135, 138 (Ind.1988); McCormick, supra, § 340 at 959–60.

Id. at 14–15, 780 P.2d at 574–75.

Second, we are also aware that, as in cases involving allegations of fraud, quasi-criminal wrongdoing, and the imposition of punitive damages, a suit based on a co-employee's "wilful and wanton misconduct" may have a stigmatizing effect on a co-employee defendant's reputation. The clear and convincing standard would ameliorate this risk. As we have previously noted, the clear and convincing standard is typically used in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant.

The interests at stake in those cases are deemed to be more substantial than mere loss of money and some jurisdictions accordingly reduce the risk to the defendant of have [sic] his [or her] reputation tarnished erroneously by increasing the plaintiff's burden of proof.

*Id.* at 15, 780 P.2d at 574 (citation and internal quotation marks omitted). Similarly,

[c]lear and convincing proof is a standard frequently imposed in civil cases where the wisdom of experience has demonstrated the need for greater certainty, and where this high standard is required to sustain claims which have serious social consequences or harsh or far reaching effects on individuals to prove willful, wrongful and unlawful acts to justify an exceptional judicial remedy.

So, in a number of cases where an adverse presumption is to be overcome, or on the grounds of public policy and in view of peculiar facilities for perpetrating injustice by fraud or perjury, the degree of proof required is expressed in such terms as "clear and convincing" and the phrase "preponderance of the evidence" has been expressly disapproved as an insufficient measure of the proof required.

*Iddings v. Mee–Lee,* 82 Hawai'i 1, 13–14, 919 P.2d 263, 275–76 (1996) (citations omitted) (some brackets added and some in original) (ellipses in original).

At first glance, the present matter appears to consist of a "monetary dispute between private parties," thus suggesting that a "preponderance of the evidence" standard is sufficient. However, we believe that the higher protections afforded by the "clear and convincing" standard of proof were necessary inasmuch as a finding of liability for a fraudulent transfer produces the reputational harm that should not be inflicted absent the "degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established[.]" Indeed the element of fraud connotes dishonesty and effectively brands the liable defendant with an imprimatur of quasi-criminality.

The ICA, when it approved a "preponderance of the evidence" standard, relied upon *United States v. Ayala,* 107 B.R. 271 (Bankr. E.D.Cal.1989). There, the United States Bankruptcy Court for the Eastern District of California concluded that a "preponderance of the evidence" standard was appropriate despite the presence of a "fraud element." *Id.* at 274. The court reasoned that "the [Bankruptcy] Code [did] not state a level of proof necessary, [and] that in the face of this silence, [c]ourts may not imply a higher standard than the preponderance standard normally applied in civil proceedings." *Id.* However, the Ayala Court's reasoning is at odds with that of many other jurisdictions that have expressly required that a plaintiff prove a fraudulent transfer by "clear and convincing evidence." *See, e.g., Blood v. Nofzinger,* 162 Ohio App.3d 545, 834 N.E.2d 358, 367–68 (2005); *Parker v. Parker,* 268 Neb. 187, 681 N.W.2d 735, 742 (2004); *McCain Foods USA, Inc. v. Central Processors, Inc.,* 275 Kan. 1, 61 P.3d 68, 77 (2002); *Bradford v. Bradford,* 993 P.2d 887, 891 (Utah Ct.App. 1999); *Gerow v. Covill,* 192 Ariz. 9, 960 P.2d 55, 62 n. 8 (Ariz.Ct.App.1998); *Farrell v. Farrell,* 36 Conn.App. 305, 650 A.2d 608, 611 (1994); *Jensen v. Eames,* 30 Utah 2d 423, 519 P.2d 236, 239 (1974); *Mohar v. McLelland Lumber Co.,* 95 Idaho 38, 501 P.2d 722, 726 (1972); *Orsen v. Siegle,* 178 Or. 403, 165 P.2d 990, 994 (1946).

Moreover, this court has repeatedly required proof by "clear and convincing evidence" with respect to other fraud-related claims. *See, e.g., Schefke v. Reliable Collection Agency, Ltd.,* 96 Hawai'i 408, 431, 32 P.3d 52, 75 (2001) (" '[F]raud on the court under Rule 60(b) must be established by clear and convincing evidence[.]'") (Citing *Madonna v. United States,* 878 F.2d 62, 65 (2d Cir.1989).) (Brackets in original.); *Shoppe v. Gucci America, Inc.,* 94 Hawai'i 368, 386, 14 P.3d 1049, 1067 (2000) (stating that a party alleging fraudulent misrepresentation must establish its elements by "clear and convincing evidence"); *Kang v. Harrington,* 59 Haw. 652, 656–57, 587 P.2d 285, 289 (1978) ("In dealing with written contracts, the standard of proof with respect to a showing of fraud is extremely high. A written

contract will be cancelled because of fraud only in a 'clear case and upon strong and convincing evidence.'") (Citing *Soares v. Freitas*, 38 Haw. 64, 65–66 (1948).).

Therefore, we conclude that the ICA gravely erred when it determined that a "preponderance of the evidence" standard was sufficient. Insofar as the fraudulent transfers have not been sufficiently proved, the circuit court's cancellation of certain quitclaim and confirmatory deeds must be vacated. Furthermore, inasmuch as neither party takes issue with the circuit court's instruction that the jury must find that the transfers were fraudulent in order to find a civil conspiracy, we also vacate Bornemann's liability for conspiring to commit fraudulent transfers.[6] Absent liability for the conspiracy claim, there is no basis for the $594,000 punitive damage award. *See* discussion *supra* at Part III.A.

## C. Standing

■ Bornemann's third point of error asserts that damages for fraudulent transfer are not warranted where reconveyance is ordered and the value of the property is sufficient to satisfy the underlying judgment.

As previously mentioned, the jury assessed the following damages against Bornemann: (1) $100,000 general damages in connection with a conspiracy to fraudulently transfer the HPP property; (2) $100,000 general damages in connection with a conspiracy to fraudulently transfer the Kaneohe property; and (3) $594,000 punitive damages in connection with his conspiracy to transfer the HPP and Kaneohe properties. However, the ICA vacat-

ed both $100,000 general damage assessments. Accordingly, Bornemann may not argue before this court that the general damages awarded were not authorized. *See State v. Baxley*, 102 Hawai'i 130, 134, 73 P.3d 668, 672 (2003) ("An aggrieved party has been defined by this court in a civil context as 'one who is *affected* or *prejudiced* by the appealable order.'") (Citing *Waikiki Malia Hotel, Inc. v. Kinkai Properties, Ltd.*, 75 Haw. 370, 393, 862 P.2d 1048, 1061 (1993).) (Emphases added.).

## D. The Preferential Transfer Rule

■■ Bornemann, in his fourth and final point of error, contends that HRS chapter 651C does not expressly dispense with the preferential transfer rule,[7] and thus the preferential transfer rule survived the legislative enactment of the UFTA.

Preliminarily, we note that part of the confusion is engendered by Bornemann's characterization of the ICA's conclusion. The ICA did not conclude that the UFTA "abrogated" the preferential transfer rule, as Bornemann avers, insofar as the use of that term connotes that the underlying concept of a preferential transfer no longer exists.[8] Rather, the ICA held that the Hawai'i UFTA "replaced," or *superseded*, the preferential transfer rule.[9]

A fair reading of HRS § 651C–4 indicates that not all transfers by a debtor are fraudulent. Thus, a transfer of property to a preferred creditor is not, in and of itself, fraudulent. Such a "preferential transfer" does not earn the title "fraudulent" unless it falls within the scope of either HRS § 651C–4 or

---

6. We do not, however, express any opinion as to the accuracy of this jury instruction.

7. The preferential transfer rule, as pronounced by this court in *In re Application of Sec. Inv. Co.*, 33 Haw. 364 (1935), is as follows:

[I]t is not fraudulent for a debtor in failing circumstances to prefer one or more of his *bona fide* creditors to the exclusion of other creditors, he having a legal right, although insolvent or in failing circumstances, to prefer one or more of his creditors by giving security for and limited to the amount of his valid debt notwithstanding that the claims of other creditors will thereby be delayed or defeated; that such preference although it may exhaust or reduce the assets of the debtor so as to leave

other creditors unpaid and without the means of collecting their claims does not of itself hinder, delay or defraud creditors within the meaning of a fraudulent conveyance to deprive them of any legal rights.

*Id.* at 369.

8. *See Black's Law Dictionary* 7 (8th ed.2004) (stating that the term "abrogate" means "[t]o abolish (a law or custom) by formal or authoritative action; to annul or repeal.").

9. To "supersede" means "[t]o annul, make void, or repeal by taking the place of." *Black's Law Dictionary* 1479 (8th ed.2004).

HRS § 651C–5. Accordingly, we generally agree that the concept of a preferential transfer has not been "abrogated" by HRS chapter 651C.

We do not, however, accept Bornemann's subsequent assertion that preferential transfers are not fraudulent, *regardless of the presence of actual fraudulent intent.* HRS § 651C–4(a)(1) perspicuously states that "[a] transfer made … by a debtor is fraudulent as to a creditor … if the debtor made the transfer … [w]ith *actual intent* to hinder, delay, or defraud any creditor of the debtor[.]" (Emphasis added.) Thus, Bornemann's contention that the presence or absence of "actual intent" is irrelevant directly contradicts the plain language of the statute.

In sum, although Hawaii's UFTA does not preclude preferential transfers *per se*, if the preferential transfer was made with "actual intent to hinder, delay, or defraud any creditor" the transfer will be deemed fraudulent. Accordingly, Bornemann's present point of error is inapposite.

### IV. CONCLUSION

Based upon the foregoing, we conclude that the ICA gravely erred by holding that a plaintiff need only prove a fraudulent transfer by a "preponderance of the evidence." Accordingly, we vacate the ICA's opinion to the extent that it (1) affirms Bornemann's liability for conspiracy to fraudulently transfer the Kaneohe and HPP properties, (2) affirms the $594,000.00 punitive damages award, and (3) affirms the circuit court's cancellation of the various deeds transferring the Kaneohe and HPP properties.

We also vacate the circuit court's February 26, 2001 "Amended Revised Final Judgment" as to Bornemann, including (1) those portions of the judgment finding Bornemann liable for civil conspiracy to commit fraudulent transfers, and (2) those portions of the judgment assessing the $594,000.00 punitive damages award. We also vacate the circuit court's February 26, 2001 "Amended Revised Final Judgment" to the extent that it cancels the following deeds: (a) that certain quitclaim deed dated May 14, 1992 and recorded in the BOC as Document No. 93–084805 on May 26, 1993, pertaining to the HPP property; (b) that certain quitclaim deed dated June 9, 1992 and filed with the Assistant Registrar of the Land Court of the State of Hawai'i as Document No. 2029945 on June 1, 1993, noted on Transfer Certificate of Title No. 342,305, pertaining to the Kaneohe property; (c) that certain quitclaim deed dated May 27, 1993 and filed with the Assistant Registrar of the Land Court of the State of Hawai'i as Document No. 2029946 on June 1, 1993, noted on Transfer Certificates of Title No. 342,305 and/or 414,762, pertaining to the Kaneohe property; (d) that certain confirmatory quitclaim deed dated October 25, 1993 and filed with the Assistant Registrar of the Land Court of the State of Hawai'i as Document No. 2080638 on October 27, 1993, noted on Transfer Certificates of Title No. 342,305, 424,555, and/or 417,762, pertaining to the Kaneohe property; and (e) that certain quitclaim deed dated October 25, 1993 and filed with the Assistant Registrar of the Land Court of the State of Hawai'i as Document No. 2080639 on October 27, 1993, noted on Transfer Certificates of Title No. 424,555 and/or 424,556, pertaining to the Kaneohe property.

We therefore remand the case to the circuit court for a new trial as to (a) whether the Kekonas can demonstrate that the transfers were fraudulent by "clear and convincing evidence," (b) whether the Kekonas can demonstrate, by "clear and convincing evidence," that Bornemann conspired to fraudulently transfer the Kaneohe and HPP properties, and (c) the appropriate remedies to be assessed against Bornemann, if any.[10]

---

10. We reiterate the point that Abastillas and Smith failed to present any meritorious argument in their applications for writs of certiorari. Notably, neither Abastillas nor Smith raised the insufficient standard of proof issue in their applications to this court. It is fundamental that "[q]uestions not presented … will be disregarded." HRAP Rule 40.1(d)(1). We do not perceive

the requisite prejudice warranting a plain error analysis. *See* HRAP Rule 40.1(d)(1) ("The supreme court, at its option, may notice a plain error not presented."). Accordingly, the ICA's opinion and the circuit court's February 26, 2001 "Amended Revised Final Judgment" are affirmed as to them.