**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-17-0000694**
**16-DEC-2022**
**08:02 AM**
**Dkt. 143 SO**

NO. CAAP-17-0000694

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

THE ESTATE OF SAMUEL MALANAO BLANCAFLOR, Deceased.

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(P. NO. 15-1-0214)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Wadsworth and McCullen, JJ.)

Petitioners-Appellants Rico A. Blancaflor, Gia B. Ramos (**Gia**), Jaime A. Blancaflor, Edgardo A. Blancaflor, and Mamerto A. Blancaflor (collectively **Objectors**) appeal from the Circuit Court of the Second Circuit's (**probate court**) amended judgment and several other decisions.[1]

---

[1] The Honorable Peter T. Cahill presided. Objectors appeal from the following:

    (1) The November 26, 2016 Findings of Fact, Conclusions of Law Regarding Decedent's Domicile in Hawaiʻi;

(continued . . .)

In 2014, Decedent Samuel Malanao Blancaflor (**Decedent**) executed a trust (**2014 Trust**) and pourover will (**2014 Will**). The 2014 Trust divided Decedent's estate among five of his eight children; named his daughter, Sonia B. Taimanao (**Sonia**), as successor trustee; and specifically stated that he "has purposefully left out children, Mert A. Blancaflor, Gia B. Ramos and James A. Blancaflor." About a year later, Decedent's sibling, Nida Temperante (**Nida**) witnessed Decedent sign a note (**Note**) purporting to revoke his 2014 Will while in his hospital bed in the Philippines.

Following Decedent's death, Sonia filed for formal determination of testacy, which Objectors opposed. Ultimately,

---

(. . . continued)

    (2) The July 5, 2017 Court's Findings of Fact, Conclusions of Law Regarding Decedent's Last Will and Testament (**Will Findings and Conclusions**);

    (3) The July 10, 2017 Judgment on Court's Findings of Fact, Conclusions of Law Regarding Decedent's Last Will and Testament[,] Order Filed July 5, 2017;

    (4) The July 14, 2017 Amended Judgment on Court's Findings of Fact, Conclusions of Law Regarding Decedent's Last Will and Testament[,] Order Filed July 5, 2017;

    (5) The August 29, 2017 Order Denying Petitioners/ Objectors' Non-Hearing Motion to (1) Alter or Amend the Amended Judgment Filed on July 14, 2017[,] (2) Certify for Appeal the Findings of Facts, Conclusions of Law Regarding Decedent's Domicile in Hawaii, Filed November 21, 2016; and

    (6) The September 7, 2017 Order Denying Petitioners/ Objectors' Non-Hearing Motion for Reconsideration of Court's Findings of Fact, Conclusions of Law Regarding Decedent's Last Will and Testament Filed July 5, 2017 (Filed July 12, 2017).

the probate court determined that the Note was not a will and did not revoke the 2014 Will.  On appeal, Objectors raise two points of error, and challenge several findings of fact (**FOF**) and conclusions of law (**COL**).

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the issues raised and the arguments advanced, we resolve the points of error and arguments as discussed below, and affirm.

**(1)** In their first point of error, Objectors contend that the probate court abused its discretion by refusing "to postpone the evidentiary hearing on the revocation note, despite a change of counsel shortly before the scheduled date, while discovery, including depositions, remained pending."  Objectors argue that the refusal to continue the evidentiary hearing resulted in the loss of testimony by Decedent's brother, Eliseo Blancaflor (**Eliseo**), which was highly prejudicial to Objectors.

In State v. Williander, the Hawai'i Supreme Court held "the relevant factors to consider in evaluating whether a motion for continuance should be granted are: (1) whether counsel exercised due diligence in seeking to obtain the attendance of the witness; and (2) whether the witness provides relevant and material testimony that benefits the defendant."  142 Hawai'i 155, 163-64, 415 P.3d 897, 905-06 (2018).  See also State v.

Villiarimo, 132 Hawaiʻi 209, 223, 320 P.3d 874, 888 (2014) (Nakayama, J., concurring) (explaining that the Hawaiʻi Supreme Court has used due diligence and materiality factors to determine whether the trial court abused its discretion in denying a motion to continue to obtain testimony of a witness).

A trial court's decision to grant or deny a motion to continue is reviewed for an abuse of discretion. Onaka v. Onaka, 112 Hawaiʻi 374, 378, 146 P.3d 89, 93 (2006); see Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 114, 839 P.2d 10, 26 (1992) (noting abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant"); Ek v. Boggs, 102 Hawaiʻi 289, 294-95, 75 P.3d 1180, 1185-86 (2003) ("Furthermore, the burden of establishing abuse of discretion is on appellant, and a strong showing is required to establish it.") (citation, internal quotation marks, and brackets omitted).

Here, the March 28, 2017 motion to continue merely stated that "Objectors respectfully request a continuance of the evidentiary hearing to depose the following individuals in the Philippines and Hawaii: . . . Eliseo Malanao Blancaflor . . . ." The declaration and exhibits attached to the March 28, 2017 motion did not provide an offer as to Eliseo's expected

4

testimony or its relevancy, or efforts to obtain his testimony. And the Objectors presented no additional arguments or information during the March 31, 2017 hearing on their motion to continue.

In a previous motion to continue, filed nearly a year earlier in April 2016, Objectors requested a continuance stating that "key witnesses are unable to fly to Maui to testify at the Evidentiary Hearing" and listing Eliseo among others. The April 2016 motion explained that Eliseo, "the brother of the Decedent and an attorney in the Philippines, is unable to fly to Maui and testify at the Evidentiary Hearing due to health issues." This motion did not indicate the substance or relevancy of Eliseo's expected testimony.

In a December 12, 2015 "Attestation letter," Nida stated that on May 7, 2015, Decedent had her look for the Note, and "Manong Ely who was with Manong Sammy earlier during the day went home already for he did not want to be caught by night fall." Nida further stated, "As I read what was written on the piece of paper Manong Sammy said to me 'Anyway that will be formalized by Eli.'"

Notably, this letter was not provided with Objectors' March 28, 2017 motion to continue, and did not establish that Eliseo was present when the Note was drafted or that Eliseo could testify about whether Decedent wrote material portions of

5

the Note. Considering Decedent's health predicament, strikingly absent from Nida's letter is any mention of Eliseo formalizing or attempting to formalize the Note between May 7, 2015 when Nida first saw the Note in the hospital and July 2, 2015 when Decedent flew to Guam escorted by his physician. Instead, Nida's letter shows that Objectors had over fifteen months to preserve Eliseo's testimony or identify his expected testimony to present to the probate court, but did not.

In sum, Objectors did not support their March 28, 2017 motion by showing Eliseo would "provide[] relevant and material testimony that benefits" them. Williander, 142 Hawai'i at 163, 415 P.3d at 905. Objectors also did not provide information in their March 28, 2017 motion to show that they "exercised due diligence in seeking to obtain" Eliseo's attendance or to preserve his testimony. Id. Without a proffer as to the relevance and materiality of Eliseo's testimony and the efforts made to obtain Eliseo's attendance or to preserve his testimony, we cannot say the probate court abused its discretion in denying Objectors' March 28, 2017 motion to continue.

**(2)** In their second point of error, Objectors contend that the probate court "erred in its decision regarding the revocation Note," arguing that the court misinterpreted Hawaii Revised Statutes (**HRS**) §§ 560:2-502, 560:2-503, and 560:2-507 (2006).

In reviewing a will, appellate courts must determine the intention of the testator from the words within the will. Tr. Created Under the Will of Damon, 76 Hawaiʻi 120, 127, 869 P.2d 1339, 1346 (1994).  Further, "a heightened level of proof [is] applicable to the disavowment of a duly-executed legal instrument."  In re Ishida-Waiakamilo Legacy Tr., 138 Hawaiʻi 98, 104, 377 P.3d 39, 45 (App. 2016) (noting clear and convincing evidence standard applies when trustor seeks equitable relief "from the clear and unambiguous terms of a trust instrument on the grounds of mistake of fact or law").

**(a)** First, HRS § 560:2-502 sets forth the requirements for a valid will:

> (a) Except as provided in subsection (b) and in sections 560:2-503, 560:2-506, and 560:2-513, a will must be:
>
>> (1) In writing;
>>
>> (2) Signed by the testator or in the testator's name by some other individual in the testator's conscious presence and by the testator's direction; and
>>
>> (3) Signed by at least two individuals, each of whom signed within a reasonable time after the individual witnessed either the signing of the will as described in paragraph (2) or the testator's acknowledgment of that signature or acknowledgement of the will.
>
> (b) A will that does not comply with subsection (a) is valid as a holographic will, whether or not witnessed, if the signature and material portions of the document are in the testator's handwriting.

7

> (c) Intent that the document constitute the testator's will can be established by extrinsic evidence, including, for holographic wills, portions of the document that are not in the testator's handwriting.

HRS § 560:2-502 (formatting altered). Furthermore,

> To serve as a will, a holographic instrument must demonstrate that the testator had a testamentary intent and that intent must be clearly expressed in the handwritten portion. A holographic will, like any will, must manifest the testator's intent of making a last and final disposition of his or her property. A testamentary intent must accompany the performance of the statutory requirements for a holographic will, and this must be proven in a manner which conforms to applicable rules of evidence and procedure.

79 Am. Jur. 2d Wills § 604 (2022) (footnotes omitted).

Here, although the Note was in writing and signed by Decedent, Nida was the only witness to sign the Note. Thus, the Note did not meet the requirements of subsection (a) because it was not "[s]igned by at least two individuals, each of whom signed within a reasonable time after the individual witnessed . . . the signing of the will . . . ." HRS § 560:2-502(a).

Turning to subsection (b), the evidence established that the signature on the Note was in Decedent's handwriting. However, there was no evidence establishing that Decedent drafted the Note, and Sonia testified the body of the Note "doesn't look like his writing." Thus, the evidence supported the probate court's determination that the Note did not meet the requirements for a holographic will under subsection (b) because there was no evidence that "material portions of the document are in the testator's handwriting." HRS § 560:2-502(b).

Regarding subsection (c), Objectors state that subsection "(c) does not immediately come into play, as 'intent' is not mentioned in part (a) or part (b), but to some extent, extrinsic evidence, by way of the testimony of Nida and Rustum Temperante [(**Rustum**)] establishes the Decedent's intent." Specifically, Objectors rely on statements by Nida and Rustum that Decedent "told them that Eli was to formalize the Note -- but [Eliseo's] testimony was unavailable, as a result of the court's refusal to continue the April 12, 2017 hearing - a ruling that was highly prejudicial to [their] case."

Again, Objectors provided no offer as to Eliseo's expected testimony and their efforts to obtain or preserve his testimony.  Testimony that Eliseo was to formalize the Note could only be extrinsic evidence of intent if the testimony of certain witnesses was found to be credible.  See generally HRS § 560:2-502(c); Black's Law Dictionary 732, 1778 (11th ed. 2019).  The probate court, however, found that "based upon all the evidence including the credibility and demeanor of all witnesses that [Decedent] did not intend to revoke his Will." FOF 30.  See Tamashiro v. Control Specialist, Inc., 97 Hawaiʻi 86, 92, 34 P.3d 16, 22 (2001) ("[T]he credibility of witnesses and the weight to be given their testimony are within the province of the trier of fact and, generally, will not be disturbed on appeal.")  In addition, when asked if Decedent

9

indicated what he intended to do, Nida responded, "No."  Thus, the probate court did not misinterpret HRS § 560:2-502, and did not err in concluding that Objectors failed to show by clear and convincing evidence that Decedent intended to replace his 2014 Will.

**(b)** Next, under HRS § 560:2-503, a document or writing constitutes a will if there is clear and convincing evidence of the decedent's intent:

> Although a document or writing added upon a document was not executed in compliance with [HRS §] 560:2-502, the document or writing is treated as if it had been executed in compliance with the section if the proponent of the document or writing establishes by clear and convincing evidence that the decedent intended the document or writing to constitute:
>
> (1)  The decedent's will;
>
> (2)  A partial or complete revocation of the will;
>
> (3)  An addition to or an alteration of the will; or
>
> (4)  A partial or complete revival of the decedent's formerly revoked will or of a formerly revoked portion of the will.

HRS § 560:2-503 (formatting altered); see Kekona v. Abastillas, 113 Hawaiʻi 174, 180, 150 P.3d 823, 829 (2006) (clear and convincing evidence "is that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established, and requires the existence of a fact to be highly probable") (citation omitted).

10

Nida testified that when she asked about the word "intestate," Decedent said it meant "let the State decide[,]" supporting Objectors' position that Decedent intended to revoke his 2014 Will. But, the probate court did not find this testimony credible. FOF 26. Also, when asked if Decedent indicated what he intended to do, Nida responded, "No."

In contrast, the attorney who drafted Decedent's 2014 Will and the 2014 Trust, indicated that Decedent was careful and deliberate in drafting his estate plan. The attorney testified that he remembers being pleasantly surprised at how intelligent Decedent was and that Decedent "filled out his information sheet with more detail than I've seen any of my other clients fill it out." The attorney also testified, "[w]e went over why he chose those five kids. He believed the other three were already successful." The attorney noted that Sonia objected at the appointment, saying she "didn't want him to make the plan that way" and that Gia "would be upset." But, Decedent responded that "it's his money, so he doesn't care." The probate court found the attorney's testimony "remarkable and credible." FOF 8.

Again, credibility determinations are the province of the probate court and will not be disturbed on appeal. See Tamashiro, 97 Hawai'i at 92, 34 P.3d at 22. Based on the record before this court, the probate court did not err in determining

11

that Objectors failed to establish by clear and convincing evidence that Decedent intended the Note to constitute a revocation under HRS § 560:2-503.

**(c)** Finally, HRS § 560:2-507 sets forth the requirements for revoking a will:

(a)  A will or any part thereof is revoked by:

    (1)  Executing a subsequent will that revokes the previous will or part expressly or by inconsistency; or

    (2)  Performing a revocatory act on the will, if the testator performed the act with the intent and for the purpose of revoking the will or part or if another individual performed the act in the testator's conscious presence and by the testator's direction.  For purposes of this paragraph, "revocatory act on the will" includes burning, tearing, canceling, obliterating, or destroying the will or any part of it.  A burning, tearing, or canceling is a "revocatory act on the will", whether or not the burn, tear, or cancellation touched any of the words on the will.

(b) If a subsequent will does not expressly revoke a previous will, the execution of the subsequent will wholly revokes the previous will by inconsistency if the testator intended the subsequent will to replace rather than supplement the previous will.

(c)  The testator is presumed to have intended a subsequent will to replace rather than supplement a previous will if the subsequent will makes a complete disposition of the testator's estate.  If this presumption arises and is not rebutted by clear and convincing evidence, the previous will is revoked; only the subsequent will is operative on the testator's death.

(d) The testator is presumed to have intended a subsequent will to supplement rather than replace a previous will if the subsequent will does not make a complete disposition of the testator's estate.  If this presumption arises and is not rebutted by clear and

> convincing evidence, the subsequent will revokes the
> previous will only to the extent the subsequent will is
> inconsistent with the previous will; each will is fully
> operative on the testator's death to the extent they are
> not inconsistent.

HRS § 560:2-507.

Subsections (a)(1) and (b)-(d) provide for revocation by a subsequent will, but as discussed above, the Note was not a will or holographic will. As for subsection (a)(2), "[t]o revoke a will by act, the testator must perform a revocatory act on the will with the intent to revoke" like "burning, tearing, canceling, obliterating, and destroying" the will. Restatement (Third) of Prop.: Wills & Donative Transfers § 4.1 (Am. Law Inst. 1999). "Cancellation encompasses acts such as crossing out or marking through the will or part of it or writing words on the will such as 'canceled' or 'null and void.'" Id. Here, there was no evidence that Decedent performed a revocatory act on the 2014 Will. Thus, the probate court did not err in determining that HRS § 560:2-507 did not apply.

**(3)** Although not included within a point of error, Objectors challenge certain findings[2] and conclusions. See Hawai'i Rules of Appellate Procedure Rule 28(b)(4)(C).

---

[2] Objectors challenge as "inaccurate" FOF 22, 25, 26, 28, 30, and 31, which stated as follows:

> 22. Other than the signature, date, and location of
> [Decedent] on the Note, no party submitted any evidence
> that [Decedent] actually wrote the Note, understood its

(continued . . .)

13

For FOF 22, to show error, Objectors primarily rely on Nida's "let the State decide" testimony, which the probate court found not credible.  Because we will not disturb the probate court's credibility finding, Nida's "let the State decide" testimony does not establish that the probate court erred in rendering FOF 22.

_____

(. . . continued)

> contents and meaning; or that he expressly intended this Note serve as a holographic will or a revocation in his estate plan.
>
> . . . .
>
> 25. The written and notarized statement conflicts in several critical aspects with the testimony of Nida and Rustum offered in court.
>
> 26. The Court finds that Nida's testimony that [Decedent] explained to her that the Note meant to "let the state decide" is not credible.  This testimony is inconsistent with this Court's finding that [Decedent] had been very careful and prudent with his financial planning.  The Court further finds that the credible evidence of Mr. Ing shows that [Decedent] would not defer to "let the state decide," especially after he employed an attorney to plan his estate.
>
> . . . .
>
> 28. The Court finds that there is no credible evidence from any witness to support the contention that the Note is a holographic will.
>
> . . . .
>
> 30. The Court finds based upon all the evidence including the credibility and demeanor of all witnesses that [Decedent] did not intend to revoke his Will.
>
> 31. The Court finds that the Will offered for probate has not been revoked.

(Formatting altered.)

For FOF 25, Objectors take issue with the word "critical" in: "[t]he written and notarized statement conflicts in several critical aspects with the testimony of Nida and Rustum offered in Court."  In the notarized December 12, 2015 "Attestation letter," Nida stated that Decedent asked her to look for the paper "I signed[.]"  She testified, however, that she "saw him sign it."  Whether Nida witnessed Decedent sign the Note is a critical aspect of her testimony because it goes to providing direct proof of one element of a holographic will, *i.e.*, that the signature on the Note was Decedent's handwriting.  See HRS § 560:2-502(b).  Despite later efforts to rehabilitate her testimony, there was a conflict between her in-court testimony and her December 12, 2015 statement.

For FOF 26, 28, and 30, the probate court relies on credibility determinations, which this court will not disturb.  See Tamashiro, 97 Hawai'i at 92, 34 P.3d at 22.  And for FOF 31, as discussed above, the probate court did not err in finding that "the Will offered for probate has not been revoked."

Objectors also argue that COL 6-10[3] were wrong, and address these conclusions in the context of their argument

---

[3]    COL 6-10 state as follows:

6. A holographic will requires the signature and material portions of the document to be in the testator's handwriting.  HRS § 560:2-502(b).  The [c]ourt concludes as

(. . . continued)

15

stating, "Rather than repeat the argument above, that the court fully erred in its decision on the revocation note, [Objectors] incorporate that argument by reference . . . ."  We address these conclusions in a similar manner and, reiterate that the

---

(. . . continued)

a matter of law that the Note fails to qualify as a holographic will because the Objectors failed to prove that [Decedent] wrote the material portion of the Note in his own handwriting, and the [c]ourt cannot make such an independent finding in the absence of evidence.

7. The [c]ourt also concludes as a matter of law that the Note also fails to qualify as a writing intended as a will pursuant to HRS §560:2-503 because the statute requires establishing by clear and convincing evidence that the [D]ecedent intended the writing to constitute his [W]ill, a partial or complete revocation of his Will, or a partial or complete revival of a formerly revoked will.  The [c]ourt concludes as a matter of law that the Objectors failed to establish by clear and convincing evidence that [Decedent] intended to replace or revoke his carefully planned and executed Will with the Note executed on his hospital bed.

8. Finally, a will or any part therefore may be revoked by either (1) executing a subsequent will that revokes the previous will or part expressly or by inconsistency, or (2) performing a revocatory act on the will with the intent and for the purpose of revoking the will or a part thereof.  HRS [§ ]560:2-507(a).

9. The [c]ourt concludes as a matter of law that because the Objectors have failed to meet their burden of proof the Note cannot be accepted as a later will.  Nor did Objectors offer any credible evidence indicating . . . [Decedent] had performed a revocatory act on the Will.  The Note is not a revocation of [Decedent's] Will.

10. The [c]ourt concludes as a matter of law that the Objectors have not met their burden by establishing prima facie proof that [Decedent] wrote those portions of the [N]ote that might constitute substantive changes to his estate plan.

(Formatting altered.)  We note that the COL challenged in Objectors' brief are misnumbered.

probate court did not err in determining the Note did not revoke Decedent's 2014 Will.

For the above reasons, we affirm the orders and judgments from which Objectors appeal.

DATED:  Honolulu, Hawai'i, December 16, 2022.

On the briefs:

Robert E. Chapman,
Reginald K.T. Yee, and
Mary Martin,
(Clay Chapman Iwamura Pulice
& Nervell),
for Petitioners-Appellants.

Deborah K. Wright,
Keith D. Kirschbraun, and
Douglas R. Wright
(Wright & Kirschbraun)
For Petitioner-Appellee
Sonia B. Taimanao.

Lisa Strandtman,
Jason M. Tani, and
Bryan M. Harada,
(Rush Moore),
for Beneficiary-Appellee
Jocelyn B. Untalan.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge