**Electronically Filed
Intermediate Court of Appeals
29036
31-MAY-2013
01:42 PM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---


BENJAMIN PAUL KEKONA and TAMAE M. KEKONA,
Plaintiffs-Appellees/Cross-Appellants, v.
MICHAEL BORNEMANN, M.D., Defendant-Appellant,
and PAZ FENG ABASTILLAS, also known as PAZ A.
RICHTER; ROBERT A. SMITH, personally; ROBERT A.
SMITH, Attorney at Law, a Law Corporation;
STANDARD MANAGEMENT, INC.; U.S. BANCORP MORTGAGE
COMPANY, an Oregon company; JOHN DOES 1-10;
JANE DOES 1-10; DOE CORPORATIONS 1-10;
DOE ENTITIES 1-10, Defendants


NO. 29036


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 93-3974)


MAY 31, 2013


FOLEY, PRESIDING JUDGE, LEONARD AND REIFURTH, JJ.


OPINION OF THE COURT BY LEONARD, J.

Defendant-Appellant Michael Bornemann, M.D. (**Bornemann**) appeals from the Final Judgment, filed on February 5, 2008, in the Circuit Court of the First Circuit (**Circuit Court**).

As discussed below, this suit arises out of a claim that two properties were fraudulently transferred to Bornemann

and that Bornemann conspired to commit a fraudulent transfer of those properties. A jury found, by clear and convincing evidence, that one fraudulent transfer had occurred and that Bornemann had conspired to commit the fraudulent transfer. Judgment was entered unwinding the transfer and awarding compensatory and punitive damages against Bornemann. Bornemann raises several issues on appeal. For the reasons set forth in this Opinion, we conclude that further proceedings are necessary to determine an appropriate remedy and that the punitive damages awarded were excessive, but that Bornemann's other contentions are without merit or constitute harmless error.

I.    BACKGROUND

The history of this case is more fully stated in Kekona v. Abastillas, 111 Hawai'i 203, 140 P.3d 436 (App. 2006) (**Kekona I**) and Kekona v. Abastillas, 113 Hawai'i 174, 150 P.3d 823 (2006) (**Kekona II**).

In 1993, Benjamin P. Kekona and Tamae M. Kekona (**Kekonas**) obtained a judgment (**1993 Judgment**) of $191,628.27 against Paz Feng Abastillas (**Abastillas**) and Robert A. Smith (**Smith**). After the 1993 Judgment was entered, two properties, a residence in Kaneohe (**Kaneohe Property**) and an apartment at Honolulu Park Place (**HPP Property**) were transferred to Bornemann. Standard Management, Inc. (**SMI**), which was wholly owned by Abastillas, and Robert A. Smith, Attorney at Law, A Law Corporation (**RASCORP**), which was wholly owned by Smith, had jointly owned the Kaneohe property, which was transferred to Abastillas and then tranferred to Bornemann. The HPP Property, which was owned by Abastillas, was transferred directly from her to Bornemann.

On October 13, 1993, the Kekonas sued SMI, RASCORP, Abastillas, Smith, and Bornemann, alleging that the transfer of the two properties constituted an unlawful attempt by judgment debtors to avoid claims by judgment creditors. The Kekonas

alleged fraudulent transfer, violation of Hawai'i's Racketeer Influenced and Corrupt Organizations law, conspiracy to fraudulently transfer, and notary misconduct.

A jury returned verdicts against SMI, RASCORP, Abastillas, Smith, and Bornemann for fraudulent transfers and conspiracy to commit fraudulent transfers and awarded special damages, general damages, and punitive damages in varying amounts against all of the defendants. The jury awarded the Kekonas $250,000 in punitive damages against Bornemann. The Circuit Court, however, found that the punitive damages award against Bornemann was excessive and ordered it reduced to $75,000.[1]

The Kekonas elected to proceed to a new trial on punitive damages against Bornemann.[2] On November 2, 2000, a jury imposed $594,000 in punitive damages against Bornemann. Bornemann appealed.

On June 8, 2006, this court (the **ICA**) held, *inter alia*, that there was no evidence to support the jury's award of $100,000 in general damages caused by the conspiracy to fraudulently transfer the Kaneohe property or $100,000 in general damages caused by the conspiracy to fraudulently transfer the HPP property and vacated the general damages award against Abastillas, Smith, and Bornemann.[3] The court otherwise affirmed, including the award of punitive damages.

Upon review of Bornemann's application for writ of certiorari, the Hawai'i Supreme Court held that the ICA gravely erred by holding that the Kekonas only needed to prove a fraudulent transfer by a preponderance of the evidence. The supreme court vacated "the ICA's opinion to the extent that it

---

[1] The Honorable Rhonda Nishimura presided over the first trial.

[2] The Honorable Victoria Marks presided over the retrial of punitive damages against Bornemann.

[3] Benjamin Kekona died on July 3, 2002 while the first appeal was pending.

(1) affirms Bornemann's liability for conspiracy to fraudulently transfer the Kaneohe and HPP properties, (2) affirms the $594,000.00 punitive damages award, and (3) affirms the circuit court's cancellation of the various deeds transferring the Kaneohe and HPP properties." Kekona II, 113 Hawai'i at 183, 150 P.3d at 832. The supreme court ordered the case to be remanded for a new trial as to "(a) whether the Kekonas can demonstrate that the transfers were fraudulent by clear and convincing evidence, (b) whether the Kekonas can demonstrate, by clear and convincing evidence, that Bornemann conspired to fraudulently transfer the Kaneohe and HPP properties, and (c) the appropriate remedies to be assessed against Bornemann, if any." Id.

On January 3, 2008, after another jury trial, the jury returned a special verdict form as follows:

**47-186 KAMEHAMEHA HIGHWAY, KANEOHE, HAWAI'I**

Question No. 1.

Did the Plaintiffs prove by clear and convincing evidence that the transfer of the Kaneohe property by Abastillas/Smith to Defendant Bornemann was done with the actual intent to hinder, delay or defraud the Plaintiffs Kekonas?

Yes  X   No ____

If you answered "Yes" to Question No. 1, then go to Question No. 2. If you answered "No" to Question No. 1, then go to Question No. 3

Question No. 2.

Did Defendant Bornemann prove by a preponderance of the evidence that he took the Kaneohe property in good faith and for reasonably equivalent value?

Yes ____   No  X

Go to Question No. 3.

Question No. 3.

Did Plaintiffs prove by clear and convincing evidence that Abastillas/Smith made the transfer

of the Kaneohe property to Defendant Bornemann without receiving a reasonably equivalent value in exchange?

Yes __X__    No ____

If you answered "Yes" to Question No. 3, then go to Question No. 3A and 3B.  If you answered "No" to Question 3, then go to Question No. 4.

Question No. 3A.

Did Plaintiffs prove by clear and convincing evidence that Abastillas intended to incur, or believed or reasonably should have believed that she would incur, debts beyond her ability to pay as they became due.

Yes __X__    No ____

Go to Question 3B.

Question No. 3B.

Did Plaintiffs prove by clear and convincing evidence that Smith intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Yes ____              No _X__

Go to Question 4.

**1809 HONOLULU PARK PLACE**

Question No. 4.

Did the Plaintiffs prove by clear and convincing evidence that the transfer of 1809 Honolulu Park Place by Abastillas to Defendant Bornemann was done with the actual intent to hinder, delay or defraud the Plaintiffs Kekonas?

Yes __X__    No ____

If you answered "Yes" to Question No. 4, then go to Question No. 5.  If you answered "No" to Question No. 4, then go to No. 6.

Question No. 5.

Did Defendant Bornemann prove by a preponderance of the evidence that he took 1809 Honolulu Park

Place in good faith and for reasonably
equivalent value?

Yes __X__     No ____

Go to Question No. 6.


Question No. 6.

Did Plaintiffs prove by clear and convincing
evidence that Abastillas made the transfer of
1809 Honolulu Park Place to Defendant Bornemann
without receiving a reasonably equivalent value
in exchange?

Yes ____                No __X__

If you answered "Yes" to Question No. 6, then go
to Question No. 6A.  If you answered "No" to
Question No. 6, then go to Question No. 7.

. . . .

**CONSPIRACY**

Question No. 7.

Did the Plaintiffs prove by clear and convincing
evidence that Defendant Bornemann conspired with
one or more other person(s) to harm the
Plaintiffs by taking part in the fraudulent
transfer of the Kaneohe property?

Yes __X__     No ____

Go to Question 8.


Question No. 8.

Did the Plaintiffs prove by clear and convincing
evidence that Defendant Bornemann conspired with
one or more person(s) to harm the Plaintiffs by
taking part in the fraudulent transfer of 1809
Honolulu Park Place?

Yes ____                No __X__

If you answered "Yes" to either Question No. 7
or 8, then go to Question No. 9.  If you
answered "No" to both Question No. 7 and 8, then
go to Question No. 11.


Question No. 9.

Did the Plaintiffs prove by clear and convincing
evidence that the conspiracy to fraudulently

transfer either property was the legal cause of damages to the Plaintiffs?

Yes __X__ No ____

If you answered "Yes" to Question No. 9, then go to Question No. 10. If you answered "No" to Question No. 9, then go to Question No. 11

Question No. 10.

What is the amount of Plaintiffs damages?

$253,075.29

Go to Question No. 11

Question No. 11.

Did plaintiffs prove by clear and convincing evidence that punitive damages should be awarded against Defendant Bornemann?

Yes __X__ No ____

If you answered "Yes" to Question No. 11, then go to Question No. 12. If you answered "No" to Question No. 11, then sign and date the verdict form and notify the court.

Question No. 12.

What is the amount of punitive damages that you award against the defendant?

$1,642,857.13

Thereafter, Bornemann filed a Motion to Amend Judgment, arguing, *inter alia,* that the compensatory damages exceeded the remand instructions by the supreme court in Kekona II, that the punitive damages failed to apportion which portion of the attorney's fees incurred by the Kekonas were attributable to himself, Abastillas, Smith, SMI, and RASCORP, and that the punitive damages award was grossly excessive and, therefore, violated his due process rights. The Circuit Court entered final judgment and denied Bornemann's motion. Bornemann timely filed this appeal.

II.  POINTS OF ERROR ON APPEAL

On appeal, Bornemann contends:  (1) the Circuit Court improperly allowed numerous documents and statements regarding Abastillas and Smith into evidence; (2) Bornemann's motion for a directed verdict on the count of constructive fraud under HRS § 651C-4(a)(2) should have been granted because there was no evidence offered at trial that Abastillas and Smith intended to incur debt beyond their ability to pay; (3) the Circuit Court improperly instructed the jury on the intent required to impose punitive damages and erroneously refused his proposed jury instruction D-7; (4) the Kekonas received a double recovery of $253,000 in damages; and (5) the punitive damages award was excessive and unconstitutional.

III. APPLICABLE STANDARDS OF REVIEW

The appellate court applies "two different standards of review in addressing evidentiary issues.  Evidentiary rulings are reviewed for abuse of discretion, unless application of the rule admits of only one correct result, in which case review is under the right/wrong standard."  State v. Ortiz, 91 Hawai'i 181, 189, 981 P.2d 1127, 1135 (1999) (citations and internal quotation marks omitted).

In Nelson v. University of Hawai'i, the Hawai'i Supreme Court stated:

> HRCP Rule 50 was recently amended and no longer refers to motions for directed verdict or for JNOV.  HRCP Rule 50 (2000).  The new rule, consistent with the Federal Rules of Civil Procedure (FRCP) Rule 50 (as amended in 1991), refers to motions for "judgment as a matter of law," and motions made after trial are referred to as "renewed motions for judgment as a matter of law." . . . [T]he change in terminology in the 1993 amendment to HRCP Rule 50 was not intended to result in a substantive change of existing Hawai'i law.

97 Hawai'i 376, 393 n.14, 38 P.3d 95, 111 n.14 (2001) (citations omitted).

> It is well settled that a trial court's rulings on
> [motions for judgment as a matter of law] are reviewed
> *de novo.*

Nelson, 97 Hawai'i at 393, 38 P.3d at 112 (citations omitted).

When reviewing a motion for judgment as a matter of law, "the evidence and the inferences which may be fairly drawn therefrom must be considered in the light most favorable to the nonmoving party and [the] motion may be granted only where there can be but one reasonable conclusion as to the proper judgment." Kramer v. Ellett, 108 Hawai'i 426, 430, 121 P.3d 406, 410 (2005) (citations omitted).

"The standard of review for a trial court's issuance or refusal of a jury instruction is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." Moyle v. Y & Y Hyup Shin, Corp., 118 Hawai'i 385, 391, 191 P.3d 1062, 1068 (2008) (citation and internal quotation marks omitted).

"An award or denial of punitive damages is within the sound discretion of the trier of fact. Absent a clear abuse of discretion, we will not reverse a trier of fact's decision to grant or deny punitive damages." Udac v. Takata Corp., 121 Hawai'i 143, 149, 214 P.3d 1133, 1139 (App. 2009) (citation, internal quotation marks and brackets omitted).

IV. DISCUSSION

A. Challenged "Documents and Statements"

Bornemann asserts that "[b]ecause of the number of objections to documents and testimony involving Smith and Abastillas at this remand trial, Dr. Bornemann 'will be unable to designate each instance in his brief.'" Bornemann argues that the Circuit Court admitted "countless documents from the 1999 trial . . . as well as countless statements through trial witnesses, under various improper and inapplicable exceptions to

the hearsay rule described in [Hawaii Rules of Evidence (**HRE**)] Rules 803(a)(2)(C) ("co-conspirator")[,] Rule 803(b)(3) ("mental, emotional or physical condition"), Rule 803(b)(8) ("public records") and Rule 803(b)(14) ("affecting an interest in property")."

Bornemann cites <u>Roxas v. Marcos</u>, 89 Hawai'i 91, 136, 969 P.2d 1209, 1254 (1998), in which the appellant stated that she was unable to designate each instance where an error occurred because the circuit court's ruling opened the door to a tremendous amount of hearsay. Bornemann's reliance upon <u>Roxas</u> to excuse his failure to comply with Rule 28 of the Hawai'i Rules of Appellate Procedure (**HRAP**) is misplaced.

In <u>Roxas</u>, the appellant complained "that the circuit court's ruling opened the door to a tremendous amount of hearsay testimony, so great that she was unable to designate each instance in her brief." <u>Id.</u> (internal quotations marks omitted). However, the court noted that the appellant did expressly identify eight "blatant and prejudicial" examples where the circuit court erred. <u>Id.</u> Yet, the court in <u>Roxas</u> did not address any of the eight specific examples identified by the appellant in its opinion because the primary point of error was whether "the circuit court erred in its preliminary determination, made pursuant to HRE Rules 104(a) and 803(a)(2)(c), [] that the Marcoses were members of conspiracies to take and dispose of Roxas's property, as well as to arrest, detain, and torture Roxas." <u>Id.</u> The court held that "plaintiffs-appellees' proffer to the circuit court was sufficient to justify its preliminary determination of the existence of conspiracies, and this court cannot hold that it was clearly erroneous." <u>Id.</u> at 138, 969 P.2d at 1256. Contrary to

10

Bornemann's interpretation, the court in <u>Roxas</u> did not excuse the appellant's failure to specifically identify each alleged error.

Despite Bornemann's claim that he is unable to cite specific errors, in his points of error he notes that he moved to strike numerous exhibits "based on hearsay and relevance, including Nos. 5, 6, 7, 20, 35, 72, 81, 126-141, 146, 147, and 190." Bornemann also refers to some parts of the testimony of Robert Bright (**Bright**) regarding Abastillas and states that his "renewed hearsay, relevancy, and Rule 403 objections were overruled." He also refers generally to testimony by Bill Carroll (**Carroll**) regarding Smith but does not point to where in the record he objected or what those objections were. Bornemann claims, generally, that the Circuit Court erred because Smith and Abastillas were neither parties nor witnesses at the 2007 remand trial and this bad character evidence by Bright, Carroll and others was inadmissible under HRE Rules 404 and 608, irrelevant under HRE Rule 402, and more prejudicial than probative under HRE Rule 403.

With respect to testimony by Bright, Bornemann merely states that his renewed hearsay, relevancy, and HRE Rule 403 objections were overruled. He does not point to where in the record he objected based upon HRE Rule 404 and 608. Therefore, objections to Bright's testimony based upon HRE Rules 404 and 608 are waived. HRAP Rule 28(b)(4). In his argument section, Bornemann does not reference any particular portion of Bright's testimony and provides no specific argument relating to relevancy or why Bright's testimony is more prejudicial than probative. Therefore, Bornemann's objections to Bright's testimony based upon hearsay and HRE Rules 402 and 403 are waived. HRAP Rule 28(b)(7).

In his argument, Bornemann does not reference any particular portion of Carroll's testimony and does not provide any specific argument regarding why the testimony should be excluded under HRE Rules 402, 403, 404, and 608. Therefore, the point of error is also waived under HRAP Rule 28(b)(7).

Lastly, none of the exhibits cited by Bornemann are specifically mentioned in his argument section and he does not provide any specific argument as to why the exhibits should be excluded due to lack of relevance or hearsay. Therefore, the point of error is waived. HRAP Rule 28(b)(7). Any other purported error not specifically mentioned, cited, or argued by Bornemann in the opening brief, because of his failure to designate such instance of error in his brief, is waived. HRAP Rule 28(b)(4) and (b)(7).[4]

B. **Sufficiency of Evidence of Fraudulent Transfer**

Bornemann claims that the circuit court erred by denying his motion for a directed verdict on claims for constructive fraud under HRS §§ 651C-4(a)(2)(A) and (B) (1993).

HRS § 651C-4 provides two theories of recovery for fraudulent transfer. Under HRS § 651C-4(a)(1), a transfer is fraudulent if it is made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor[.]" In contrast, HRS § 651C-4(a)(2) has no intent requirement. Instead, a transfer is fraudulent if it is made without "receiving a reasonably equivalent value in exchange for the transfer" and the debtor

> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

---

[4]    As we do not address the merits of Bornemann's evidentiary contentions, he is free to raise such objections upon a retrial of the punitive damages, if one is conducted.

12

> (B) Intended to incur, or believed or reasonably
> should have believed that the debtor would incur,
> debts beyond the debtor's ability to pay as they
> became due.

See HRS §§ 651C-4(a)(2)(A) and (B).

Bornemann contends that the December 2007 trial focused solely on whether there was an "actual intent to hinder, delay, or defraud" under HRS § 651C-4(a)(1). Although the Kekonas state in their answering brief that there is "overwhelming" evidence of constructive fraud under HRS § 651C-4(a)(2), the evidence they cite relates to fraudulent transfer under HRS § 651C-4(a)(1). Furthermore, a review of the record reveals that no evidence was presented regarding whether (1) the remaining assets of Abastillas or Smith "were unreasonably small in relation to the business or transaction" as required by HRS § 651C-4(a)(2)(A); or (2) Abastillas or Smith "[i]ntended to incur, or believed or reasonably should have believed that [they] would incur, debts beyond [their] ability to pay as they became due" as required by HRS § 651C-4(a)(2)(B).

Thus, there was no legally sufficient evidentiary basis for a reasonable jury to find there was a constructive fraudulent transfer under HRS §§ 651C-4(2)(A) or (B). Accordingly, the Circuit Court erred in denying Bornemann's motion for judgment as a matter of law. However, the Circuit Court's error had no effect on the outcome of the case because the jury found there was clear and convincing evidence of fraudulent transfer under HRS § 651C-4(a)(1). On appeal, Bornemann has not challenged the jury's finding of fraudulent transfer under HRS § 651C-4(a)(1). In addition, Bornemann has not alleged any harm from the denial of his motion for judgment as a matter of law. Therefore, we conclude that the Circuit Court's error was harmless.

13

C.    Double Recovery

After the December 2007 jury trial, the jury in its special verdict form awarded the Kekonas $253,075.29 in damages against Bornemann.  Subsequently, in its February 4, 2008 Order Granting the Kekonas' Renewed Motion for Cancellation of Deeds, the Circuit Court "declared cancelled and void" the deeds pertaining to the fraudulent transfer of the Kaneohe property. Bornemann presents numerous arguments for why the Circuit Court erred in allowing both compensatory damages and the cancellation of the fraudulent transfer of the Kaneohe property:

> First, this Court found that no separate conspiracy damages occurred in this case, and no new evidence of such damages was tendered at the remand trial. Second, the Supreme Court clearly affirmed the ICA's ruling in 2006, and Judge Marks exceeded her authority and the scope of its remand when she allowed [the Kekonas] to retry this issue.  Third, regardless, applying the same analysis to the current judgment, this Court should find that [the Kekonas] have proved no separate damages for conspiracy.  Fourth, while HRS Section 651C-7 provides for "[a]ny other relief the circumstances may require," the language is controlled by HRS Section 651C-8(b), which limits any judgment to "the value of the asset transferred [or] the amount necessary to satisfy the creditor's claim, whichever is less."  Fifth, since the [May 1993 judgment] provides for interest, and [the Kekonas] proffered no evidence that the $444,000 balance cannot be satisfied by the [Kaneohe property], these "interest damages" constitute a double recovery.

Bornemann's first two arguments are without merit. In the June 8, 2006 Memorandum Opinion (**2006 Memorandum Opinion**), the ICA found "[t]here is no evidence supporting the jury's award of (1) $100,000 general damages caused by the conspiracy to fraudulently transfer the Kaneohe property and (2) $100,000 general damages caused by the conspiracy to fraudulently transfer the HPP property."  In their September 26, 2006 opinion, the supreme court found that Bornemann was without standing to argue "that the general damages awarded were not authorized" because this court had already vacated the conspiracy damages.

14

The supreme court further concluded that the ICA gravely erred by holding that a plaintiff need only prove a fraudulent transfer by a preponderance of the evidence. Thus, the court vacated the ICA's 2006 Memorandum Opinion to the extent that it

> (1) affirms "Bornemann's" liability for conspiracy to fraudulently transfer the Kaneohe and HPP properties, (2) affirms the $594,000.00 punitive damages award, and (3) affirms the circuit court's cancellation of the various deeds transferring the Kaneohe and HPP properties.

The supreme court remanded the case to the Circuit Court for a new trial in order to determine

> (a) whether the Kekonas can demonstrate that the transfers were fraudulent by "clear and convincing evidence," (b) whether the Kekonas can demonstrate by, "clear and convincing evidence," that Bornemann conspired to fraudulently transfer the Kaneohe and HPP properties, and (c) the appropriate remedies to be assessed against Bornemann, if any.

Although the supreme court did not directly address the ICA's finding on conspiracy damages because of standing, it explicitly found that a new trial was necessary in order to determine "the appropriate remedies to be assessed against Bornemann, if any." Therefore, the Circuit Court did not err in retrying the issue of conspiracy damages at the December 2007 trial.

Bornemann's third argument concerns whether the Kekonas proved separate damages for conspiracy to fraudulently transfer the Kaneohe property. The undisputed evidence is that the accumulated interest from the 1993 Judgment in the amount of $191,000 is $253,075.29. The jury awarded $253,075.29 against Bornemann for his participation in the conspiracy to fraudulently transfer the Kaneohe property. Thus, because of Bornemann conspiring to fraudulently transfer the Kaneohe property, the Kekonas were unable to collect on their original judgment, which

15

resulted in the accumulation of $253,075.29 in interest on that judgment. However, as the ICA concluded in its 2006 Memorandum Opinion, the damages necessary to compensate for the "conspiracy" are the same damages as are necessary to compensate the Kekonas for the fraudulent transfer and, although the amount of interest on the original $191,000 increased, no other damages were proven. As discussed further below, setting aside for the moment the issue of punitive damages, the Kekonas are entitled to a remedy that fully compensates them for the harm they suffered as a result of Bornemann's wrongful conduct. However, they are not entitled to collect that amount more than once.

Bornemann's fourth and fifth arguments are related. Bornemann argues that HRS § 651C-8(b) limits any fraudulent transfer judgment to the value of the asset transferred or the amount necessary to satisfy the creditor's claim, whichever is less. Bornemann notes that the 1993 Judgment was for approximately $191,000 and the accumulated interest on that judgment was roughly $253,000, making a total of approximately $444,000. Since the current equity in the Kaneohe property is purportedly at least $950,000, Bornemann argues, the Circuit Court's cancellation of the fraudulent transfer of the Kaneohe property provides "twice the equity necessary to fund the [May 1993] judgment." Thus, Bornemann argues that the compensatory damages award constituted "double recovery" because there was no evidence that the liquidation of the Kaneohe property would not satisfy the 1993 Judgment plus the interest.

With respect to compensatory damages for a fraudulent transfer, and/or compensatory damages for a conspiracy to commit a fraudulent transfer (which in this case results in a unified amount of damages), although not entirely correct (with respect to the equity in the Kaneohe property), Bornemann's point is well

16

taken.  The Kekonas are entitled to a variety of means to secure a full recovery of their losses from Bornemann and/or the asset fraudulently transferred to him, but only once, not twice.  See generally HRS §§ 651C-7 & 651C-8 and 37 Am. Jur. 2d Fraudulent Conveyances and Tranfers §§ 142-172 (2001) (discussing remedies for fraudulent conveyances and transfers).

Under HRS Chapter 651C, the statutory remedies for fraudulent transfers reflect and codify the variety of legal and equitable remedies available under the common law.  HRS § 651C-7 (1993) provides:

§ 651C-7  Remedies of creditors.  (a) In any action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations provided in section 651C-8, may obtain:

(1)     Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(2)     An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by chapter 651;

(3)     Subject to applicable principles of equity and in accordance with applicable civil rules of procedure:

(A)     An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(B)     Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(C)     Any other relief the circumstances may require.

(b) If a creditor has obtained a judgment on a claim against the debtor, the creditor may, if the court so orders, levy execution on the asset transferred or its proceeds.

The relevant limitations in HRS § 651C-8 are as follows:

> **§ 651C-8 Defenses, liability, and protection of transferee.**
> . . .
>
> (b) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under section 651C-7(a)(1), the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c), or the amount necessary to satisfy the creditor's claim, whichever is less....
>
> (c) If the judgment under subsection (b) is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require.
> . . . .

Thus, Hawai'i's statutory scheme allows the Kekonas to avoid the transfer of the Kaneohe property to the extent necessary to satisfy their claim (§ 651C-7(a)(1)), attach the property for execution (§ 651C-7(a)(2)), obtain an injunction against disposition, receiver for the property, or other equitable relief (§ 651C-7(a)(3)), and levy execution on the Kaneohe property (or its proceeds) (§651C-7(b)), or the Kekonas may recover a judgment for the value of the asset transferred or the amount they are due, whichever is less (§ 651C-8(b)). If the value of the asset transferred were less than the amount due to the Kekonas, then HRS § 651C-8(c) would limit the judgment to the value of the asset at the time of the transfer, subject to any equitable adjustments that might be required by the court under the circumstances of the case.

In addition, HRS § 651C-10 (1993) allows the Kekonas to seek any other legal or equitable remedies that are not supplanted by the fraudulent transfers statute, providing:

> **§ 651C-10 Supplement of provisions.** Unless displaced by the provisions of this chapter, the principles of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud,

misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement its provisions.

Taken as a whole, this statutory scheme provides the Kekonas with any number of ways to recover what is due to them, but it does not allow them to be compensated more than once. Clearly (and again setting aside the issue of punitive damages for the moment), the Kekonas can set aside the transfer of the Kaneohe property to the extent necessary to satisfy the amount of the original judgment plus the statutory interest, which is an additional amount of damages due to them (whether construed as damages for the fraudulent transfer or the conspiracy to commit the fraudulent transfer). The Kekonas can execute on the property without voiding the transfer. The Kekonas can attach and execute on other property of Bornemann in the amount due to them. The Kekonas can obtain a money judgment against Bornemann. Nothing in the Hawai'i statute requires the Kekonas to elect one remedy over another. The statute does not, however, allow them recovery of both the asset transferred (regardless of its value) and, in addition, a judgment in the full amount of their damages.

Thus, although the Kekonas are entitled to relief against Bornemann for the amount of the original underlying judgment against Smith and Abastillas plus the statutory interest awarded by the jury as damages, further proceedings are necessary to fashion an appropriate form or forms of remedy, executed in a manner that their recovery does not exceed the sums due to them.

D.   Jury Instructions

Bornemann contends that the Circuit Court erred by giving a standard jury instruction on punitive damages geared toward negligence cases because it was not applicable to the intentional tort of conspiracy. Bornemann argues that the instruction "authorized the jury to award such damages solely

19

based on intentional conduct." Bornemann also contends that the Circuit Court "improperly refused to instruct the jury on the crucial distinction between the intent necessary to establish liability for conspiracy and the intent necessary to warrant punitive damages." Bornemann claims that "the intent needed to impose punitive damages is not the same kind of intent used to show a conspiracy to violate the Uniform Fraudulent Transfer Act." Instead, Bornemann states that the Circuit Court should have cautioned the jury "that something more than the intent necessary to show conspiracy was necessary for punitive damages."

> Hawaiʻi precedent on punitive damages is generally as follows:
>
>> [Actions] of tort punitive damages may, under certain circumstances, be awarded in addition to such sum as the plaintiff may be found entitled to purely by way of compensation for his injuries and suffering. Such damages may be awarded in cases where the defendant "has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations"; or where there has been "some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences". In such cases a reckless indifference to the rights of others is equivalent to an intentional violation of them.
>
> Bright v. Quinn, 20 Haw. 504, 511-12 (1911) (citations omitted).

Kaopuiki v. Kealoha, 104 Hawaiʻi 241, 256, 87 P.3d 910, 925 (App. 2003). The court in Kaopuiki went on to state:

> Succinctly stated,
>
>> [the] proper measure of punitive damages is (1) the degree of intentional, willful, wanton, oppressive, malicious or grossly negligent conduct that formed the basis for [the] prior award of damages against [the tortfeasor] and (2) the amount of money required to punish [the tortfeasor] considering [his or her] financial condition.
>
>> Instruction No. 8.12, Hawaiʻi Civil Jury Instructions, 1999 edition; Kang, 59 Haw. at 660-61, 587 P.2d at 291.

Id. at 258, 87 P.3d at 927 (footnote omitted) (emphasis added).

20

In <u>Kang v. Harrington</u>, 59 Haw. 652, 653, 587 P.2d 285, 287 (1978), the appellant W. Dewey Harrington (**Harrington**) appealed from a judgment that found him "culpable of fraud with respect to a certain rental agreement." In a non-jury trial, the plaintiff was awarded $1,800 in compensatory damages and $20,000 in punitive damages because the circuit court held that Harrington committed fraud in attempting to obtain a perpetual or long-term rental agreement. <u>Id.</u> at 653, 655, 587 P.2d at 287, 288. After the court held that there was sufficient evidence that Harrington committed fraud, it addressed Harrington's claims that punitive damages were not warranted. <u>Id.</u> at 659-60, 587 P.2d at 290-91. The court in <u>Kang</u> stated:

> But even the finding of fraud of appellant on appellee will not necessarily result in an award of punitive damages. Punitive damages are in no way compensatory and are not available as a matter of right. An award of punitive damages is purely incidental to the cause of action. They may be awarded by the grace and gratuity of the law. They also act as a means of punishment to the wrongdoer and as an example and deterrent to others. *Sebastian v. Wood*, 246 Iowa 94, 66 N.W.2d 841 (1954). Punitive damages may be awarded only in cases where the wrongdoer "'has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations'; or where there has been 'some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences.'" (Citations omitted). *Bright v. Quinn*, 20 Haw. 504, 512 (1911).

<u>Id.</u> at 660-61, 587 P.2d at 291.

In discussing the award of punitive damages, the <u>Kang</u> court stated:

> Clearly, in the instant case, appellant did not act in good faith intending to benefit either appellee or society as in *Ress*. Rather, as in *Anderson* and *Howell*, appellant acted intentionally and for his own benefit in defrauding appellee.
> The evidence indicates that, similar to the fraud in *Anderson*, appellant embarked upon a fraudulent scheme designed to acquire a long-term right to appellee's property. Appellant intentionally made the misstatement that his letter of intent was for the 3052 Hibiscus Drive property instead of the agreed upon 2927 Hibiscus Place property and that the $400 was for the first month's rent

rather than as a security deposit. He also intentionally inserted the perpetual option provision into the rental contract even though the parties only agreed to a one-year option and obtained Dolly Won's signature by hurriedly showing the document to her and stating that he was in a rush. Appellant further sought to fraudulently perfect his claim to a perpetual option by making numerous improvements to the property without acquiring appellee's consent and preparing a fraudulent wall plan of the improvements and letter of approval.

Thus, we find that even ignoring appellant's fraud on the court, appellant's fraudulent conduct with respect to appellee did rise to the level of oppressiveness, wantonness and malice sufficient to support an award of punitive damages.

Id. at 662, 587 P.2d at 292.

The court in Kang cited the same evidence of intent to defraud as it used to affirm the award of punitive damages.

In this case, the jury was instructed on punitive damages as follows:

If you find that the plaintiffs have proved with clear and convincing evidence that the defendant conspired to fraudulently transfer either property, then you may consider whether you should also award punitive damages. The purposes of punitive damages are to punish the wrongdoer and to serve as an example or warning to the wrongdoer and others not to engage in such conduct.

You may award punitive damages against the defendant only if plaintiffs have proved by clear and convincing evidence that the defendant acted intentionally, willfully, wantonly, or oppressively. Punitive damages may not be awarded for mere inadvertence, mistake or errors of judgment.

The proper measure of punitive damages is (1) the degree of intentional, willful, wanton, oppressive or malicious conduct; (2) the amount of money required to punish the defendant considering his financial condition without considering the value of either Honolulu Park Place or the Kaneohe property; and (3) the reasonable and necessary expense of litigation including attorneys fees, expert witness fees, and the inconvenience and time involved in preparing for trial. In determining the degree of the defendant's conduct, you must analyze the defendant's state of mind at the time he committed the conduct. You may

22

> award punitive damages even if no special damages have
> been awarded.  Any punitive damages you award must be
> reasonable.

(Emphasis added.)

As demonstrated by Kang and Kaopuiki, the Circuit Court's instruction in this case was an accurate statement of the law and the instruction would be the same whether the underlying cause of action was based upon a negligent or intentional tort.

The jury instruction clearly stated that the jury "may consider" whether to impose punitive damages if it found by clear and convincing evidence that Bornemann conspired to fraudulently transfer the Kaneohe or HPP property.  Contrary to Bornemann's claim, it did not invite the jury to impose punitive damages merely because the jury found that Bornemann conspired to fraudulently transfer the Kaneohe property.  The Circuit Court did not err in instructing the jury on punitive damages.

Bornemann also claims "the court improperly included language on attorney's fees, despite Plaintiff's failure to apportion those fees among the seven defendants in this case, or limit it to the trial on remand."  Bornemann's point of error is without merit "[b]ecause punitive damages are designed to punish the wrongdoer, and not to compensate the injured party, they can neither be apportioned nor subject to contribution among joint tortfeasors."  Ozaki v. AOAO of Discovery Bay, 87 Hawaiʻi 273, 290, 954 P.2d 652, 669 (App. 1998) (citation and internal quotation marks omitted), aff'd in part and overruled in part on other grounds by Ozaki v. AOAO of Discovery Bay, 87 Hawaiʻi 265, 954 P.2d 644 (1998).  The jury did not award the Kekonas' attorney's fees.  The jury was instructed that it may consider the Kekonas' attorney's fees when determining the proper amount of punitive damages.

Bornemann also contends that the Circuit Court erroneously rejected his proposed jury instruction D-7, "which noted that he could not be assessed damages for conspiracy solely because of [the other] Defendants' misconduct." Bornemann claims that his proposed jury instruction was an accurate statement of the law and was crucial to his defense.

Bornemann's proposed jury instruction D-7 stated:

> If you find that the Plaintiffs presented clear and convincing evidence that Paz Feng Abastillas or Robert A. Smith violated the Uniform Fraudulent Transfer Act [fraudulently transferred property], but cannot find that the Plaintiffs have proved with clear and convincing evidence that the Defendant conspired with them, then the Plaintiffs cannot be awarded damages of any kind. In other words, you cannot award damages to the Plaintiffs unless you find clear and convincing evidence that the Defendant conspired with Abastillas and Smith to violate the UFTA [fraudulently transfer either or both properties].

The record does not state whether Bornemann or the court made changes to the proposed jury instruction before it was refused over Bornemann's objection.[5]

Regardless, Bornemann's proposed jury instruction D-7 is not an accurate statement of the law. Plaintiffs claimed that Bornemann, Abastillas, and Smith conspired to commit a fraudulent transfer of property. It is true that Plaintiffs could not be awarded damages against Bornemann if they found that he did not conspire with another to commit a fraudulent transfer of property. However, the jury was not required to find that "Defendant conspired with <u>them</u>," in order to award damages against Bornemann. As the Circuit Court instructed the jury, "[a] conspiracy is an agreement by two or more persons to commit a wrongful act." The jury was not required to find that Bornemann conspired with "them" (both Abastillas and Smith). A

---

[5] Strikeouts and words in brackets were handwritten changes to the typewritten proposed jury instruction as reflected in the record on appeal.

finding that Bornemann conspired with Abastillas <u>or</u> Smith is sufficient to find that Bornemann was part of a conspiracy.

When the jury instructions are considered as a whole, they accurately and sufficiently state the substantial principle of conspiracy, the elements of conspiracy, and the burden of proof required for the jury to find that Bornemann conspired to commit a fraudulent transfer. Moreover, the jury was instructed that mere association with other persons who were allegedly or actually part of a conspiracy does not prove that a person is also part of that conspiracy. Therefore, Bornemann's complaint that the jury instructions allowed for a finding that he was part of a conspiracy merely by associating with Abastillas and/or Smith is without merit. The Circuit Court's refusal to include Bornemann's proposed jury instruction D-7 was also not prejudicial to Bornemann.

E.    Punitive Damages

Bornemann argues that the Circuit Court erred in denying his Motion for Remittitur because, *inter alia*, the jury's punitive damages award in the amount of $1,642,857.13 was so excessive that it violated his due process rights under the Fourteenth Amendment of the U.S. Constitution.

The U.S. Supreme Court has stated that the "Due Process Clause of the Fourteenth Amendment prohibits a State from imposing a grossly excessive punishment on a tortfeasor." BMW of N. Am. Inc. v. Gore, 517 U.S. 559, 562 (1996) (citations and internal quotation marks omitted). A grossly excessive punitive damages award "furthers no legitimate purpose and constitutes an arbitrary deprivation of property." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 417 (2003) (citation omitted). The U.S. Supreme Court has instructed courts reviewing the constitutionality of a punitive damages award to weigh (1) the degree of reprehensibility of the defendant's misconduct, (2) the

disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. Gore, 517 U.S. at 574-75.

"[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." Id. In order to determine the reprehensibility of a defendant, courts must analyze whether (1) the harm caused was physical as opposed to economic; (2) the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated actions or was an isolated incident; and (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident. Id. at 576-77. In addition, the U.S. Supreme Court instructed that:

> [t]he existence of any one of these factors weighing
> in favor of a plaintiff may not be sufficient to
> sustain a punitive damages award; and the absence of
> all of them renders any award suspect. It should be
> presumed a plaintiff has been made whole for his
> injuries by compensatory damages, so punitive damages
> should only be awarded if the defendant's culpability,
> after having paid compensatory damages, is so
> reprehensible as to warrant the imposition of further
> sanctions to achieve punishment or deterrence.

Campbell, 538 U.S. at 419 (citation omitted).

In this case, the majority of the above-referenced factors associated with particularly reprehensible conduct are not present. The harm inflicted by Bornemann's conduct on the Kekonas was purely economic in nature; the conspiracy to fraudulently transfer the Kaneohe property resulted in the Kekonas' inability to collect on their original 1993 Judgment and not any physical harm. Bornemann's conduct evinced no indifference to or reckless disregard for the health and safety

of others. Further, there is no evidence that the Kekonas were particularly financially vulnerable.

Regarding the fourth factor, the Kekonas argue that Bornemann "participated fully in numerous incidents of wrongdoing between 1993 and 2008." The jury found that Bornemann conspired to fraudulently transfer the Kaneohe Property. The conduct that Bornemann was held accountable for was solely his participation in that transfer and not for any action. Thus, Bornemann's conduct was the result of a single incident and not repeated actions. Finally, pertaining to the fifth factor, the Kekonas' financial harm was the direct result of Bornemann's intentional conduct because there was ample evidence that Bornemann intended that the fraudulent transfer of the Kaneohe property take place.

Thus, weighing the factors together, Bornemann's conduct was sufficient to give rise to tort liability and some award of punitive damages based on his intentional conduct, but his actions did not rise to the high degree of reprehensibility necessary to warrant $1,642,857.13 in punitive damages.

When considering the disparity between the actual harm suffered by the plaintiff and the punitive damages award, the U.S. Supreme Court has stated that the proper inquiry is "whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred." Gore, 517 U.S. at 581 (citations, internal quotation marks and emphasis in original omitted). "[C]ourts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." Campbell, 538 U.S. at 426.

The Supreme Court has declined "to impose a bright-line ratio which a punitive damages award cannot exceed." Id. at 425. However, the Supreme Court has instructed that "few awards

exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." Id.

Here, the remedies available to the Kekonas and the compensatory damages awarded in this case were considerable. Because of Bornemann's participation in the conspiracy to fraudulently transfer the Kaneohe Property, the Kekonas were unable to collect on their 1993 Judgment, which resulted in damages in the amount of $253,075.29, equal to the accumulated interest. Thus, the Kekonas were awarded $253,075.29 in compensatory damages, and were also provided with remedies to collect on the 1993 Judgment against Bornemann's assets as discussed above. In light of the circumstances of this case, an award of punitive damages of approximately six and one-half times the interest-based damages is unreasonable and disproportionate to the actual harm done to the Kekonas from Bornemann's conduct. Therefore, this factor weighs against the Kekonas.

Neither party has identified another Hawai'i state court case that has dealt with punitive damages related to a conspiracy to fraudulently transfer, and we have found none. In the case at bar, however, it appears that the judgment debtors, Smith and Abastillas, who were most directly culpable for seeking to avoid their liability to the Kekonas, were assessed just $250,000 in punitive damages. In a comparable case adjudicated in the United States District Court for the District of Hawai'i, but involving a much larger judgment debt, the District Court awarded $250,000 in punitive damages, but only against the judgment debtor.

In Valvanis v. Milgroom, No. 06-00144, 2009 WL 1561575, at *1 (D. Haw. June 1, 2009), Plaintiffs Mary, John, and George Valvanis (**Plaintiffs**) alleged that Defendants Robert B. Milgroom (**Milgroom**) and Nada Martl (**Martl**) "engaged in a scheme to hide and shield assets from Milgroom's creditors, including

28

Plaintiffs." Plaintiffs had previously obtained a judgment against Milgroom "totaling almost $4 million." Id. at *2. After the Plaintiffs were unable to collect on their judgment, they filed a complaint against Valvanis and Martl for, inter alia, fraudulent transfer under the Hawai'i Uniform Fraudulent Transfer Act and civil conspiracy to defraud. Id. at *6. In their complaint, Plaintiffs alleged that "Milgroom and Martl sought to evade Milgroom's creditors by using Milgroom's money to purchase real property located in Honolulu, Hawai'i" and then transferred the property to Martl. Id. at *1. On June 1, 2009, in separate orders, the District Court entered default judgment against Milgroom and Martl on Plaintiff's claims for fraudulent transfer and conspiracy to defraud. Id. at *18; Valvanis v. Milgroom, No. 06-00144, 2009 WL 1561571, at *14 (D. Haw. June 1, 2009).

The District Court awarded $250,000 in punitive damages against Milgroom. Valvanis, No. 06-00144, 2009 WL 1561575 at *18. The court emphasized that Milgroom "engaged in a willful, elaborate scheme to hide his assets and frustrate his creditors' attempts to collect on his debts" and "was willing to take extreme steps to hide his assets and prevent his creditors from tracking down these transfers. Id. at *17, 18. In addition, Milgroom "flout[ed] court orders and rules" in order to prevent Plaintiffs from collecting on their judgment when he "refused to produce any documents or certify his interrogatory responses, and then launched a series of frivolous arguments meant only to delay[.]" Id. at 18. Thus, the District Court found that "awarding punitive damages is necessary to punish Milgroom for his outrageous conduct and to deter both Milgroom and others from similar conduct in the future." Id. Punitive damages were not awarded against Martl.

In the 2006 Memorandum Opinion, the ICA declined to disturb a punitive damages award of $594,000 against Bornemann. However, that award was based on conspiracy to fraudulently transfer the HPP Property, as well as the Kaneohe Property, which represents multiple acts of misconduct, as well as the shielding of assets of greater value from the Kekonas' judgment. Here, we are of the opinion that, although Bornemann's conduct did rise to the level of oppressiveness, wantonness, and malice sufficient to support an award of punitive damages, the amount of punitive damages awarded violated Bornemann's due process rights. Based on Bornemann's conduct, and in light of all of the circumstances of this case, including the punitive damages awarded against Smith and Abastillas, and considering the punitive damages awarded under similar circumstances, we find that punitive damages in the amount of $250,000 is sufficient to punish Bornemann. However, "[t]o allow the appellate court to order straight out the reduction or increase of the amount of the verdict would serve to substitute the judgment of the appellate court for the jury." Kang, 59 Haw. at 664 n.3, 587 P.2d at 293 n.3. "This would violate the Seventh Amendment of the United States Constitution and Article I, Section 8 of the Hawaii State Constitution protecting the right to trial by jury in certain cases." Id. Therefore, upon remand, the Circuit Court shall provide the Kekonas with the option of submitting remittitur as to $1,392,857.10 in punitive damages or proceed with a new jury trial to determine the amount of punitive damages that should be awarded against Bornemann.

V.    CONCLUSION

        For the foregoing reasons, the Circuit Court's February 5, 2008 Final Judgment is vacated and remanded for further proceedings consistent with this Opinion.

On the briefs:

Peter Van Name Esser
for Defendant-Appellant

Fred Paul Benco
for Plaintiffs-Appellees/
Cross-Appellants

31